IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARA H.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civ. No. 2:20-cv-01841-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Sara H. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income benefits. Full consent to magistrate jurisdiction was entered on May 24, 2021 (Dkt. #13). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

**BACKGROUND**

Plaintiff is a 34-year-old woman who alleges she is unable to work due to low intellectual functioning and other mental and physical impairments. On September 12, 2018, Plaintiff protectively filed an application for supplemental security income alleging disability beginning November 23, 2015. Tr. 14. The claim was initially denied on November 13, 2018, and upon reconsideration on April 23, 2019. Plaintiff requested a hearing before an ALJ on May 15, 2019.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

Plaintiff appeared by video and testified at a hearing held on February 7, 2020. She was represented at the hearing by an attorney. The ALJ Jesse Shumway found Plaintiff not disabled on February 19, 2020. The Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

> 3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.
>
>> a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

3 - Opinion and Order

Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since September 12, 2018, the application date. Tr. 17.

2. Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), and borderline intellectual functioning. Tr. 17.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 16.

4. Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to simple, routine tasks consistent with GED reasoning and math levels of 2 or less; she must learn new tasks by demonstration; she can have only superficial contact with the public; she needs a routine, predictable working environment with no more than occasional changes; and she cannot perform managerial responsibilities. Tr. 19-20.

5. Past relevant work is expedited. Tr. 23.

6. Plaintiff was born on July 18, 1988, and was 30 years old, which is defined as a younger individual age 18-49, on the date her application was filed. Tr. 23.

7. Plaintiff has at least a high school education and is able to communicate in English. Tr. 23.

8. Transferability of job skills is not material to the determination of disability because Plaintiff does not have past relevant work. Tr. 24.

9. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager, salvage laborer, and meat clerk. Tr. 24.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since September 12, 2018, the date the application was filed. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.
2. Whether the ALJ properly evaluated the medical opinions and evidence.

For the following reasons, the Court finds that the ALJ erred in evaluating Plaintiff's subjective mental symptom testimony and the medical opinions regarding her mental impairments. The decision of the Commissioner is reversed and remanded for further proceedings.

**I.     The ALJ erred in evaluating Plaintiff's subjective symptom testimony.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the

severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Here, the ALJ noted that Plaintiff alleged disability primarily based on mental limitations, including posttraumatic stress disorder, depression, and attention deficit disorder, difficulty learning, problems in memory, task completion, concentration, understanding, and getting along with others. Tr. 20. Plaintiff also alleged physical limitations, including severe and persistent back pain, and the inability to sit no longer than ten minutes, stand no more than 14 minutes and walk about one block at a time. The ALJ erred in discounting Plaintiff's subjective mental symptom testimony but did not err regarding Plaintiff's alleged physical symptoms.

    a. **The ALJ gave two clear and convincing reasons to discount Plaintiff's physical symptoms.**

7 - Opinion and Order

First, the ALJ found that the objective evidence did not support Plaintiff's physical allegations. The objective medical evidence is a relevant factor in evaluating a claimant's symptoms, though it cannot be the sole ground on which testimony is discounted. 20 C.F.R. § 416.929(c)(2). Here, the ALJ properly considered the objective testing and evaluations, which showed few abnormalities. The ALJ noted that her reports of severe back and knee pain are unsupported. Imaging of the knee and spine did not show abnormalities, physical examination findings included normal range of motion without deformity, normal gait, straight-leg raise testing, and mild effusion.

Second, the ALJ found that Plaintiff's level of daily activity does not support the alleged physical limitations. This is a proper consideration under the regulations. 20 C.F.R. § 404.1529(c)(3); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff reported the ability to complete activities of self-care without difficulty; she provides pet care and prepares meals; she cleans and does yardwork for two-three hours; and she shops. Tr. 21, 224, 225, 226. Indeed, she reported engaging in all of these activities without any physical limitation. Tr. 224-26. The ALJ reasonably found that Plaintiff's daily activities stood at odds with her allegations of very limited sitting and walking capacity. Plaintiff's physical limitations were a small portion of her claimed disability and the ALJ's reasons for discounting these subjective symptoms were clear and convincing.

### b. Plaintiff's mental subjective symptoms were improperly discounted, resulting in reversible error.

First, as above, the ALJ found that the objective evidence did not support Plaintiff's subjective symptoms. This is objectively false. Numerous providers acknowledged Plaintiff's mental limitations, which were observed with objective testing. Dr. Fitzgerald's objective testing identified low intellectual functioning and use of language at the level of a nine- or ten-year-old

8 - Opinion and Order

and overall cognitive skills equivalent to an eleven-year-old. Dr. Wheeler's objective testing revealed an IQ score of 70, at the very bottom of "borderline" intellectual functioning, and Plaintiff's difficulty expressing her thoughts with language and inconsistent ability to understand tasks. Tr. 21, 287-306. Both psychologists concluded based on testing that Plaintiff would need her work checked to make sure Plaintiff understood what was asked of her and was properly carrying it out. Tr. 294, 306. The ALJ improperly rejected these opinions, as discussed below. Objective testing supports Plaintiff's reported symptoms.

Second, the ALJ noted that although Plaintiff reported that she ceased mental health care and did not return to it because of her homelessness, further questioning established she was not homeless during the time in question. While this may reflect an inconsistency, the Court does not find this is a proper reason to discount Plaintiff's alleged subjective mental symptoms. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) *quoting Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"). The ALJ erred by concluding that Plaintiff's failure to seek mental health treatment "suggests that she was asymptomatic or, at most, mildly symptomatic."

Third, the ALJ noted that Plaintiff's work history does not show substantial work at any time in her life, suggesting "the impetus for her lack of employment is longstanding and unrelated to her capacity for work." A poor work history extending before the alleged onset date is generally a valid consideration. *See* 20 C.F.R. § 416.929(c)(3). However, here, the ALJ acknowledges that Plaintiff's low intellectual functioning is a lifelong condition. Therefore, even though Plaintiff alleges a disability "onset" date, there is no indication of a disabling event

9 - Opinion and Order

that changed her circumstances such that this rationale is a legitimate reason to discount her symptoms or limitations. The ALJ erred by discounting Plaintiff's subjective mental limitations for improper reasons. On remand, the ALJ shall credit Plaintiff's subjective mental limitations and re-formulate the RFC accordingly.

> II. **The ALJ did not properly evaluate the medical opinions of Dr. Fitzgerald, Dr. Wheeler, Dr. Maly, Dr. Kopp, Dr. Nisbet.**

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on September 12, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

10 - Opinion and Order

### a. The ALJ improperly rejected the opinion of Dr. Fitzgerald.

Jarod Fitzgerald, Ph.D. examined Plaintiff in November 2014 and again in January 2015, soon after Plaintiff's children were placed in protective custody by Child Protective Services based on concerns about Plaintiff's ability to understand her infant daughter's cues or meet the needs of her children, as well as her apparent inability to retain information and implement new strategies Plaintiff had been shown. Tr. 287. Plaintiff denied any "major problems," "expressed loving her children dearly and wanting to do anything to get them back," and "appeared to be putting forth her best effort on all tasks" that Dr. Fitzgerald gave her through a series of objective testing of intellectual, behavioral and emotional functioning. Tr. 287-98. Dr. Fitzgerald assessed the test results to be valid. Tr. 292. Testing of intellectual functioning illuminated low average general intellectual ability, with Plaintiff's greatest weakness in the ability to know and understand spoken words, express herself using words, and use language to solve problems. Tr. 290-93, 298. Dr. Fitzgerald noted, "These results suggest that while she may be able to repeat what someone has said, she will actually use language at a level equivalent to about a nine- or ten-year-old." Tr. 291. Plaintiff's "overall performance on the IQ test placed her cognitive skills as being equivalent to the average 11-year-old." Tr. 294. Dr. Fitzgerald added that "she may give an impression that she has comprehended information when she has simply regurgitated it," a tendency that "likely sets her up for failure because others believe that she has understood what was said or what needs to be done and then she cannot follow through because she has not fully comprehended the information and does not have the reasoning skills to implement them appropriately." Tr. 294.

Dr. Fitzgerald diagnosed Plaintiff with Generalized Anxiety Disorder, Major Depression, and Borderline Intellectual Functioning. Tr. 293. He gave provisional diagnoses of Schizoid

Personality Disorder and Avoidant Personality Disorder, and "rule-out" Posttraumatic Stress Disorder. Tr. 293. Dr. Fitzgerald opined that "others will need to check for understanding by having her show the action rather than simply repeat it," that Plaintiff would need visual teaching, that Plaintiff may fail to follow through with expectations because of low self-esteem, and that "frequent follow-up after teaching a new skill" will be important to make sure Plaintiff understands expectations. Tr. 294-95.

The ALJ rejected Dr. Fitzgerald's assessment and opinion in a single sentence: "This assessment is not persuasive, as it is dated many years before the application date, and there is no significant connection to the claimant's current functionality." Tr. 22. This reasoning is without merit and constitutes reversible error. As discussed above, the ALJ acknowledged that Plaintiff's borderline intellectual functioning is a life-long condition. Moreover, while Plaintiff's application date was September 18, 2018, her alleged disability onset date is November 23, 2015, within about a year of Dr. Fitzgerald's first evaluation, and eleven months after his second. Section 416.912 requires the Commissioner to develop the medical record "for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary...." 20 C.F.R. § 416.912(b). There is no indication that Plaintiff's impairments or limitations changed significantly such that Dr. Fitzgerald's opinion is entirely irrelevant to Plaintiff's current disability status. On remand, the ALJ shall credit Dr. Fitzgerald's assessments and opinion and re-formulate the RFC accordingly.

**b. The ALJ improperly rejected the opinion of Dr. Wheeler.**

Kimberly Wheeler, Ph.D., evaluated Plaintiff in September 2017 for the Washington Department of Social and Health Services. Tr. 287, 299-306. Dr. Wheeler noted that Plaintiff had been in special education from elementary through high school, that she had been applying for

jobs and was willing to "take anything I can get!" but that Plaintiff reported potential employers told her she was "overqualified." Tr. 299. Dr. Wheeler noted Plaintiff's reports of insomnia, feeling "drained," and sadness over the loss of her children. Tr. 300.

Dr. Wheeler performed a mental status examination and administered IQ testing, which revealed a full-scale IQ score of 70, in the second percentile and considered the low end of "borderline." Tr. 302-05. Dr. Wheeler diagnosed "Adjustment Disorder with mixed anxiety and depressed mood," and "Borderline Intellectual Functioning (lowest end of scale)." Tr. 300. Dr. Wheeler observed that Plaintiff "worked consistently and evenly through the test, giving good effort." Tr. 305. Dr. Wheeler concluded that the test results were reliable and valid. Tr. 305. Dr. Wheeler noted that Plaintiff "[s]truggles to see how parts fit together," and her "[s]pirits sank when she knew she wasn't doing well." Tr. 305. Tracking her thought process in language was difficult for Plaintiff; when asked how many weeks are in a year, Plaintiff answered: "Well some months have 30 and some have 31." Tr. 305. When Dr. Wheeler repeated the question, Plaintiff responded, "4." Tr. 305. Plaintiff was able to attend to visual details only sometimes. Tr. 305. "With some tasks she knew how to make use of the bits of info, other times had zero idea how to incorporate them." Tr. 305. Plaintiff "found it hard to solve problems using language"; for example, she was "stumped" in trying to explain what "winter" and "breakfast" are. Tr. 305. Dr. Wheeler opined that Plaintiff has moderate limitation in six categories of mental function, and concluded, "If she is to work, she'll require placement assistance and an understanding boss who is willing to spend extra time and supervision to see her succeed." Tr. 301, 306. Dr. Wheeler added, "Her work would need to be diligently checked." Tr. 305.

The ALJ rejected Dr. Wheeler's September 2017 evaluation and found it "not persuasive" for two reasons: (1) "It is remote from the adjudicatory period," and (2) it "is

internally inconsistent." Tr. 22. The first reason is not supportable. While SSI benefits cannot be paid until the month after Plaintiff's application date, the date of Plaintiff's SSI application does not dictate the period during which evidence must have been created in order to be relevant to disability. *See* 20 C.F.R. §§ 416.335, 416.920c, 416.945(a)(3); Listings § 12.00C.2. Plaintiff alleges a disability onset date of November 2015, and her low intellectual functioning is a lifelong condition. There is no indication that her impairments improved substantially after Dr. Wheeler's assessment, such that her opinion is not relevant to Plaintiff's current functioning.

The second reason is not supported by the evidence. ALJ stated that "Dr. Wheeler concluded the claimant did not show abnormalities in thought process, content, orientation, perception, memory, fund of knowledge, concentration, abstract thoughts, insight, and judgment." Tr. 22. The ALJ apparently was relying on only a portion of Dr. Wheeler's lengthy assessment, the mental status examination form Dr. Wheeler completed that requires checking a box for either "yes" or "no" regarding whether a certain category of the examination is "within normal limits." Tr. 303. Boxes are checked "yes." Tr. 303. But the mental status examination was only one piece of the evaluation tools Dr. Wheeler used. The ALJ failed to provide any reason why the checked boxes made during the mental status examination make Dr. Wheeler's evaluation – which is based not only on the mental status examination but also on objective testing and nuanced evaluation of intellectual deficits – "internally inconsistent," and none is apparent. For example, during the mental status examination portion of the evaluation, Dr. Wheeler checked "yes" on "Thought Process and Content," making the following explanatory note: "Organized, goal-directed, with appropriate flow. Content appropriate to questions." Tr. 303. But when Dr. Wheeler administered the IQ testing, specific deficits were revealed, including Plaintiff's difficulty tracking her thought process with appropriate language, such as

14 - Opinion and Order

struggling to discern whether questions were about days, weeks or months. Tr. 305. There is no inherent inconsistency between Dr. Wheeler's assessment that Plaintiff appeared to have thought process and content within normal limits during her initial examination of Plaintiff and then discovering specific deficits during more specific and formalized testing of intellectual ability.

Moreover, Dr. Wheeler's and Dr. Fitzgerald's opinions are highly consistent with each other regarding the nature of special assistance and supervision that Plaintiff requires. Dr. Wheeler opined: "If she is going to work, she's going to need skills training, placement services, and an employer willing to consistently offer extensive supervision." Tr. 302. Dr. Wheeler added that Plaintiff's work "would need to be diligently checked." Tr. 305. These opinions are based on substantial objective testing and observations, are well-reasoned, thoughtful, and ultimately highly supportable and consistent. The ALJ had no reason not to find them persuasive. On remand, the ALJ shall credit Dr. Wheeler's assessment and opinion and re-formulate the RFC accordingly.

### c. The ALJ did not properly evaluate Dr. Maly's assessment of Plaintiff, and the ALJ shall reconsider it on remand.

Annika Maly, M.D. became Plaintiff's treating physician in May 2019. Tr. 355. Dr. Maly took many of Plaintiff's claimed ailments at face value, without necessarily diagnosing any specific conditions. Plaintiff had reported to Dr. Maly that she had "the IQ of an 11 year old," and Dr. Maly stated: do not doubt this claim. I struggle in our office visits to keep her focused and on task. In our correspondence, her writing is at a middle school level. She has poor insight into her persistent pain syndrome and has limited coping skills. We struggled to get through the Medical Source Statement as she had poor understanding of the questions." Tr. 355. Dr. Maly opined that Plaintiff's knee pain, back pain and learning disability preclude Plaintiff from lifting more than twenty pounds, that Plaintiff cannot sit, stand and walk for a combined total of eight

15 - Opinion and Order

hours in an eight-hour workday, that Plaintiff would need to shift between sitting and standing at will, that Plaintiff would be off task and unable to pay attention more than twenty-five percent of a workday, that Plaintiff would need unscheduled breaks, and that Plaintiff would miss work five or more days per month. Tr. 57-58. Dr. Maly assessed "marked" limitation in Plaintiff's ability to follow basic instructions, work with others, report to work on time every day, and maintain concentration, persistence or pace. Tr. 359. Thus, Dr. Maly opined that Plaintiff is not suited for full time employment, based on both mental and physical limitations.

The ALJ's reasons for discounting Dr. Maly's assessment of Plaintiff's functional limitations are weak and ambiguous at best. The ALJ first stated that Dr. Maly's conclusions "rely heavily on the claimant's subjective allegations and her own observations." Tr. 22. Heavy reliance on a claimant's self-reported limitations, without any medical assessment, is a reason to discount a medical opinion, but reliance on subjective allegations and a physician's own observations is not.

The ALJ also discounted Dr. Maly's assessment because "there is no evidence [Dr. Maly] is particularly well-suited to offer opinion evidence regarding mental functioning." Tr. 22. Dr. Maly is a physician and there is no indication in the record that she is less well-suited to offer her opinion on her patient's mental health than any other treating physician.

Finally, the ALJ stated that Dr. Maly's "treatment of the claimant consisted of a mere handful of visits, and her statement does not identify a single medically determinable impairment, simply symptoms which, by her own admission, are not corroborated by the objective record." Tr. 22. Certainly, Dr. Maly's assessment of Plaintiff's mental and intellectual functioning is not as well-supported as Dr. Fitzgerald's or Dr. Wheeler's, but, particularly when

those two opinions are credited, there is more of an objective record supporting some of the limitations assessed by Dr. Maly.

The Court has already found multiple reversible errors in the ALJ's decision not to award benefits to Plaintiff. On remand, the ALJ must credit the rejected opinions of Dr. Fitzgerald and Dr. Wheeler, and the subjective mental symptom testimony by Plaintiff. Yet it is still the ALJ's function to resolve discrepancies in the record and to formulate the RFC. For this reason, the opinion of Dr. Maly, and her observations and assessments of Plaintiff's functioning, as well as the opinions of the agency medical consultants, should be reconsidered in light of the credited evidence.

### d. The ALJ shall reconsider the medical report by Dr. Kopp on remand.

The medical record is scant regarding Plaintiff's physical impairments, but the Court finds that the ALJ erred by discounting the medical opinion of Dr. Kopp, who determined that Plaintiff had "significant" right calf and thigh atrophy, which is recognized as a medically determinable impairment in and of itself. Therefore, this opinion should be reconsidered on remand, along with all of the medical evidence in the record.

### ORDER

The ALJ improperly evaluated the subjective symptom evidence and medical opinion evidence, resulting in reversible error. The case is reversed and remanded for further proceedings. On remand, the ALJ shall credit the subjective symptom testimony and the medical opinions of Dr. Fitzgerald and Dr. Wheeler. The other medical evidence, including the opinions of the other providers discussed above shall also be reconsidered in light of the credited evidence.

It is so ORDERED and DATED this 12 day of May, 2022.

_____
MARK D. CLARKE
United States Magistrate Judge

18 - Opinion and Order